THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DAVID A. DANIEL, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| HANCOCK COUNTY SCHOOL | : | CIVIL ACTION |
| DISTRICT, RICHARD | : | NO. 5:13-CV-390 (CAR) |
| MAYWEATHER , TAMPA LEWIS, | : | |
| PATRICK L. WILLIAMS, and | : | |
| KENDREZ MAYWEATHER, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff David A. Daniel filed this 28 U.S.C. § 1983 action against the Hancock

County School District ("School District"); three employees of the Hancock County

Sheriff's Department, Richard Mayweather, Tampa Lewis, and Patrick L. Williams

("Officer Defendants"); and a former student and football player at Hancock County

High School, Kendrez Mayweather ("Student Defendant").  Plaintiff seeks damages for

injuries he suffered during an altercation at a football game.  He alleges the School

District and the Officer Defendants violated his substantive due process right to bodily

integrity under the Fourteenth Amendment by failing to protect him from foreseeable

violence.  Currently before the Court are Motions to Dismiss filed by the School District

and the Officer Defendants, and Plaintiff's Motion to Amend his Complaint.  Upon

review of applicable law, the Complaint, and the Motions and responses thereto, the

Court finds Plaintiff fails to establish he was deprived of a constitutional right, and his

attempt to amend his complaint is futile.  Accordingly, and for the reasons stated below,

the Motions to Dismiss [Docs. 12 & 15] are **GRANTED**, and Plaintiff's Motion to

Amend Complaint [Doc. 20] is **DENIED as futile**.  The Court declines to exercise

supplemental jurisdiction over Plaintiff's state law claims, and those claims are

**DISMISSED without prejudice**.

## BACKGROUND

For purposes of these Motions, the Court accepts all factual allegations in

Plaintiff's proposed Amended Complaint [Doc. 20-2] as true and construes them in the

light most favorable to Plaintiff.

At all times relevant to this action, Plaintiff was employed by the Warren County

School District as a teacher and the head football coach of the Warren County High

School football team.[1]  On the evening of October 14, 2011, the football teams from

Hancock Central High School ("Hancock County") and Warren County High School

("Warren County") were scheduled to play each other at the football stadium on

Hancock County's campus.[2]  A rivalry existed between the two schools.[3]

---

[1] Compl. ¶ 2.
[2] *Id.* at ¶¶ 30-32.

Several events occurred before, during, and after the October 14, 2011 football game between Warren County and Hancock County that intensified the rivalry and caused the game to become a dangerous event.[4]  Early in the football season, the Warren County head football coach was removed.  Plaintiff replaced the former head coach just hours before Warren County's first football game of the season.[5]  Plaintiff's predecessor was later hired as an assistant football coach of the Hancock County football team.[6]  As the football game between Hancock County and Warren County approached, members of the Hancock County coaching staff and team saw the game as an opportunity to "get even" for what they thought was Plaintiff's predecessor's wrongful removal as head coach of Warren County.[7]

On October 7, 2011, one week before the October 14 football game, Hancock County played Washington-Wilkes high school in Washington, Georgia.[8]  Several members of the Warren County football team attended the football game between Hancock County and Washington Wilkes.[9]  After the game, some football players on Hancock County and Warren County became involved in verbal altercations, and law

---

[3] *Id.* at ¶ 39.
[4] *Id.* at ¶ 40.
[5] *Id.* at ¶ 41.
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶ 42.
[9] *Id.*

enforcement intervention was required; at least one player had to be placed in handcuffs.[10]

During the week leading up to the football game between Hancock County and Warren County, football players and students from both schools exchanged text messages and other communications warning of possible trouble at the October 14 game.[11]  Players from both teams taunted and threatened each other.[12]

Prior to the game, Warren County notified the Hancock County School District that it had concerns about the security to be provided at the game.[13]  In fact, a Warren County law enforcement officer also inquired into the security measures to be provided at the game.  The School District advised the Warren County law enforcement officer that approximately twelve (12) officers from the Hancock Sheriff's Department and the Sparta Police Department would be at the game.[14]  In fact, only four (4) officers were actually present at the game.[15]

The October 14 game was Hancock Central's homecoming, and a large crowd was present at the game.[16]  During the game, at least one Hancock County football

---

[10] *Id.*
[11] *Id.* at ¶ 43.
[12] *Id.* at ¶ 44.
[13] *Id.* at ¶ 47.
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 45.

player was ejected for fighting.[17]   Warren County won the game by a score of 21-2.[18]

After the game, the Hancock County football players remained together on the field

with their coaches while the Warren County players left the field.[19]   Plaintiff went to the

Hancock County players to congratulate them on a game well-played, which angered

some of the Hancock County players and coaches.[20]   In addition, as the Warren County

players left the field, several members of Hancock County's band left the stands and ran

toward the Warren County band, taunting and attempting to provoke them until the

directors of the bands for both schools placed themselves between the two bands.[21]

The locker rooms for both teams were in the same building in a field house

adjacent to the football field.[22]   The door to Warren County's locker room was on one

side of the field house, and the door to Hancock County's locker room was on another

side of the field house.[23] When the Warren County players reached their locker room,

the door was locked, and they had to remain outside.[24]   As the last of the Warren

County players approached their locker room, the Student Defendant and at least one

other Hancock County player were walking behind them and taunting them.[25]   After

---

[17] *Id.* at ¶ 48.
[18] *Id.* at ¶ 49.
[19] *Id.* at ¶ 53.
[20] *Id.*
[21] *Id.* at ¶ 52.
[22] *Id.* at ¶ 50.
[23] *Id.*
[24] *Id.* at ¶ 54.
[25] *Id.* at ¶ 55.

one of the Warren County players responded to the taunts, the Student Defendant and other Hancock County players rushed toward the Warren County players, and a fight ensued.[26]  Football helmets were thrown and used as weapons.[27]

The three Officer Defendants walked with the Hancock County players as they left the field.[28]  Upon seeing the fight ensue, the Officer Defendants ran to the front of the Hancock County players and began spraying the Warren County players with pepper spray.[29]  The Officers did not spray the Warren County players for any legitimate law enforcement purpose or another legitimate purpose.  Instead, they pepper-sprayed the Warren County players intending to injure and disable them and assist the Hancock County players in the fight.[30]

Upon being pepper sprayed, one Warren County player fell to the ground whereupon the Student Defendant intentionally struck the player on the back of his head with a football helmet.[31]  When the Warren County player attempted to get up, the Student Defendant pulled his helmet back to strike him again.[32]  As the Student Defendant was preparing to strike, Plaintiff got in front of Student Defendant and

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 56.
[29] *Id.*
[30] *Id.* at ¶ 57.
[31] *Id.*at ¶ 59.
[32] *Id.* at ¶ 60.

yelled, "What are you doing?"[33]  In response, the Student Defendant intentionally struck

Plaintiff in the face and head with the helmet.[34]

Plaintiff sustained serious personal injuries as a result of being struck by the

Student Defendant.[35]  He suffered a "blow out" of the bones surrounding his right eye

and had to receive extensive medical care and underwent many surgical procedures for

the injuries to his eye.  Metal screws, metal plates, and other devices were placed

around his eye.  Moreover, Plaintiff suffered a significant closed head injury and has

received extensive treatment at the Shepherd Center's Brain Injury Rehabilitation

Program in Atlanta, Georgia.  The personal injuries Plaintiff has suffered have

permanently impaired his ability to perform many major life activities, including

work.[36]

The School District knew it needed to provide the proper security and security

training for the football game between Hancock County and Warren County but failed

to provide both.[37]  Consistent with its policy, practice, and custom, the School District

employed an inadequate number of security officers, and failed to have a security plan

in place before, during, or after the game.[38]  Moreover, the School District, consistent

with its policy, plan, and custom, failed to provide any training to those who provided

---

[33] *Id.* at ¶¶ 60-61.

[34] *Id.* at ¶ 61.

[35] *Id.* at ¶ 62.

[36] *Id.* at ¶ 63.

[37] *Id.*at ¶ 34, 40, 46.

[38] *Id.* at ¶ 34.

security at the football game, failed to provide any supervision of those who provided security, and was deliberately indifferent to its need to provide such training[39]  Instead, the School District simply paid four off-duty deputy sheriffs who the School District knew had no experience or training in matters such as crowd control or event security.[40]

The School District took no action against the Officer Defendants or the Student Defendant.[41]  In fact, the School District, through its Superintendent and Board of Education, stated publicly that after review, it approved, condoned, and supported the Defendant Officers' and the Student Defendant's conduct on October 14, 2011.[42]  The School District even continued to employ the Officer Defendants to provide security at school events after the date of the incident.[43]  Moreover, the School District filed false charges against Plaintiff in relation to the October 14 incident and sought to have the Georgia Professional Standards Commission revoke or suspend Plaintiff's certification as an educator.[44]

The Georgia High School Association ("GHSA"), of which both Hancock County and Warren County are members, investigated the incident and imposed penalties against Hancock County.[45]  Hancock County appealed GHSA's imposition of penalties

---

[39] *Id.* at ¶¶ 35-38.
[40] *Id.* at ¶ 40.
[41] *Id.*  at ¶¶ 65, 66.
[42] *Id.*
[43] *Id.*  at ¶ 65.
[44] *Id.*  at ¶ 67.
[45] *Id.*  at ¶ 68.

and lost.[46]  Throughout this investigation and appeal, the School District defended and

supported the conduct of the Defendant Officers and the Student Defendant.[47]

Now, Plaintiff asserts Section 1983 and 42 U.S.C. § 1988 claims against the School

District and the Officer Defendants, and various state law claims against all Defendants.

The School District and the Officer Defendants have moved to dismiss all claims, and

Plaintiff has filed a Motion to Amend his Complaint.  The Court discusses each Motion

below.

**MOTIONS TO DISMISS**

## I.  Legal Standard

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a

plaintiff's complaint.[48]  To avoid dismissal pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face."[49]  A claim is plausible

where the plaintiff alleges factual content that "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[50]  The

plausibility standard requires that a plaintiff allege sufficient facts "to raise a

---

[46] *Id.*

[47] *Id.*

[48] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[49] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

[50] *Id.*

reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[51]

## II. Discussion

Plaintiff asserts Section 1983 claims against the School District and the Officer Defendants for their failure to protect him in violation of his Fourteenth Amendment liberty interest in bodily integrity. Plaintiff also asserts claims for attorney's fees pursuant to 42 U.S.C. § 1988 against the School District and the Officer Defendants, and various state law claims against all Defendants.

### A. Section 1983 Claims

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."[52] A plaintiff may bring a § 1983 claim against a governmental entity or person in his individual or official capacity.[53] Here, Plaintiff brings claims against the School District and the Officer Defendants for their alleged violation of his substantive due process rights. To establish liability under section 1983 against both the School District and the Officer Defendants (collectively, Defendants), Plaintiff must prove their actions deprived him of a constitutional right.

---

[51] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[52] 42 U.S.C. § 1983.

[53] *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

10

As discussed below, because Plaintiff cannot establish such a deprivation, his federal claims must be dismissed.

Plaintiff contends Defendants violated his Fourteenth Amendment substantive due process rights to bodily integrity by failing to protect him.  The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[54] Embodied in the Fourteenth Amendment is the protection of both procedural and substantive due process. "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty."[55]

The Supreme Court has tightly restricted the scope of substantive due process claims and has expressed its reluctance to expand its scope.[56]  Indeed, the Supreme Court has been particularly unreceptive to the central premise of Plaintiff's position in this case—that the public has a substantive due process right to be protected by the government from criminals among us.  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's

---

[54] U.S. CONST. amend. XIV § 1.

[55] *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (*en banc*) (internal citations omitted).

[56] *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) (citation omitted) ("[G]uideposts for responsible decision making in this unchartered area [expansion of substantive due process] are scarce and open-ended.  The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.").

power to act, not as a guarantee of certain minimal levels of safety and security."[57]

The provision's "purpose was to protect people from the State, not to ensure that the

State protected them from each other."[58] It is well accepted that "[a]s a general matter,

a State's failure to protect an individual against private violence simply does not

constitute a violation of the Due Process Clause."[59]

The protections of the Due Process Clause will be triggered, however, where a

"special relationship" exists between an individual and the States, such as where the

State takes a person into its custody and holds him against his will as in the case of

incarcerated prisoners or involuntarily committed mental patients.[60]  However, this

exception does not apply here, as Plaintiff was not in a custodial relationship with

Defendants.

In cases such as the one here, where non-custodial relationships are involved, the

government can be held liable under the substantive due process clause "only where an

official's act or omission is 'arbitrary[] or conscience-shocking.'"[61]  "[O]nly the most

egregious official conduct can be said to be arbitrary in the constitutional sense."[62]  The

Due Process Clause does not "impos[e] liability whenever someone cloaked with state

---

[57] *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).
[58] *Id.* at 196.
[59] *Id.* at 197.
[60] *Id.* at 198-99.
[61] *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) (quoting *Collins*, 503 U.S. at 128).
[62] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

authority causes harm."[63] "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."[64]

The facts alleged in Plaintiff's Amended Complaint clearly do not rise to the level of arbitrary or conscience-shocking. Plaintiff alleges that the School District was "deliberately indifferent" to its need to provide proper security and proper training in security for football games in general and the October 14 football game specifically, and such deliberant indifference deprived Plaintiff of his Fourteenth Amendment liberty interest in bodily integrity. Even assuming that the School District acted with deliberate indifference, due-process liability does not attach for such indifference. The Eleventh Circuit "has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting: 'While deliberate indifference to the safety of government employees in the workplace may constitute a tort under state law, it does not rise to the level of a substantive due process violation under the federal Constitution.'"[65] Indeed, decisions about resources to be allocated to

---

[63] *Id.* at 848.

[64] *Id.* at 846.

[65] *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002) (quoting *White v. Lemacks*, 183 F.3d 1253, 1259 (11ᵗʰ Cir. 1999) (no Section 1983 liability where nurse, while working in jail infirmary, was beaten by inmates)).

safety are best left to "locally elected representative, rather than . . . federal judges interpreting the basic charter of Government for the entire county."[66]

Plaintiff also alleges that the Officer Defendants pepper sprayed the Warren County players with the intent to injure the players and assist the Hancock County players in the fight and that such conduct is "fairly attributable to the School District."[67] The Court recognizes that "conduct intended to injure in some way <u>unjustifiable by any government interest</u> is the sort of official action most likely to rise to the conscience-shocking level."[68]  Here, however, even accepting that the Officer Defendants intended to injure the Warren County players and assist the Hancock County players, they still had a governmental interest in curtailing the altercation.  Moreover, nothing in the Amended Complaint alleges that the Officer Defendants intended to injure Plaintiff; the Complaint alleges they intended to injure the players.

Finally, Plaintiff cannot save his claim by characterizing Defendants' actions as "arbitrary" and "conscious shocking in a constitutional sense."[69]  These characterizations amount to no more than labels and conclusions.  Eleventh Circuit case law illustrates how rigorous conscience-shocking conduct is,[70] and the facts as alleged in

---

[66] *Collins*, 503 U.S. at 128-29.

[67] Compl. ¶ 58.

[68] *Cnty. of Sacremento*, 523 U.S. at 849 (emphasis added).

[69] Compl. ¶ 58.

[70] *See, e.g., Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002) (college instructor's conduct did not rise to conscience-shocking level where instructor slammed door on student's arm causing the glass to shatter, knocked student back by swinging the door violently, and shoving plaintiff's face); *Nix v. Franklin County*

Plaintiff's Amended Complaint clearly do not rise to that level.  The Eleventh Circuit

has stated that "when someone not in custody is harmed because too few resources

were devoted to their safety and protection, that harm will seldom, if ever, be

cognizable under the Due Process Clause."[71]  This case is no exception.  Plaintiff cannot

establish Defendants deprived him of a constitutional right, and thus, his federal claims

must be dismissed.

## B.  State Law Claims

Having dismissed Plaintiff's federal claims, the Court must now determine

whether it should exercise supplemental jurisdiction over the remaining state law

claims.[72]  The Court may decline to exercise supplemental jurisdiction over non-

diverse state law claims if:

(1) The claim raises a novel or complex issue of State law,

---

*School District*, 311 F.3d 1373 (11th Cir. 2002) (court found no constitutional deprivation where student died after touching an exposed live wire in teacher's electromechanical class during a voltage-reading demonstration); *compare Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000) (court found high school coach's conduct conscience shocking where he intentionally struck a student with metal weight, knocking student's eye out of its socket, as form of punishment for student's involvement in fight with another student); *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003) (court found high school principal's conduct conscience shocking where he struck student with metal cane in head, ribs, and back for disciplinary reasons).

[71] *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999).

[72] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

(2) The claim substantially predominates over the claim or claims over which

the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original

jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for

declining jurisdiction.[73]

Additionally, in deciding whether or not to exercise supplemental jurisdiction over

pendent state law claims under § 1367(c), a court should also consider the interest of

judicial economy, convenience, fairness to the litigants, and comity.[74]

Here, all of the federal claims over which this Court has original jurisdiction

must be dismissed. "When the district court has dismissed all federal claims from a

case, there is a strong argument for declining to exercise supplemental jurisdiction over

the remaining state law claims."[75]   The Eleventh Circuit has repeatedly stated that

"[s]tate courts, not federal courts, should be the final arbiters of state law."[76]   Having

fully considered the matter, the Court concludes that Plaintiff's state law claims should

be determined by the Georgia courts.  Thus, the Court finds it appropriate to decline to

---

[73] 28 U.S.C. § 1367(c).

[74] *See Palmer v. Hosp. Auth. of Randolph Cnty.,* 22 F.3d 1559, 1569 (11th Cir. 1994).

[75] *Arnold v. Tuskegee Univ.,* 212 F. App'x 803, 811 (11th Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

[76] *See, e.g., Baggett v. First Nat. Bank of Gainesville,* 117 F.2d 1342, 1353 (11th Cir. 1997).

exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c).

## MOTION TO AMEND COMPLAINT

Plaintiff seeks to amend his Complaint to clarify facts in hopes of stating a claim under the rigorous arbitrary and conscience-shocking standard that governs his federal claims. Rule 15 of the Federal Rules of Civil Procedure provides that "a court should freely give leave [to amend] when justice requires."[77] However, courts may deny leave to amend where the amendment would be futile.[78] Plaintiff's proposed amendments would be futile. As discussed above, even accepting Plaintiff's facts as alleged in the Amended Complaint as true, Plaintiff fails to state a constitutional deprivation in this case, and thus his Motion to Amend must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. 12 & 15] are **GRANTED**, and Plaintiff's Motion to Amend Complaint [Doc. 20] is **DENIED as futile**. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and thus those claims are **DISMISSED without prejudice**.

---

[77] Fed. R. Civ. P. 15(a).
[78] *Equity Lifestyle Prop., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009).

**SO ORDERED**, this 7th day of May, 2014.

S/  C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

SSH/bbp